BENJAMIN SPRAGUE & another *v.* CHRISTOPHER RHODES & others.

A court of equity will not retain a bill to abate a dam which flows lands of the plaintiffs until the title of the plaintiffs is established at law, after upwards of forty years' user by the defendants of the dam upon payment of compensation, as they aver, under claim of right; but will dismiss the bill with costs.

BILL in equity, filed December 20th, 1855, to abate a dam maintained by the defendants at the outlet of Mashapaug Pond,

in Cranston, which the bill alleged caused water to flow back upon the·lands of the plaintiffs, situated upon the borders of Spectacle Pond, and created a nuisance thereon. The bill stated, that there had not been upon said dam any mill requiring the use of the waterfall as·a motive-power for more than twenty years past; and that during many of said years the dam had been open, and the water drawn down to the natural level of said Spectacle Pond; and that, for the time during which the dam had been maintained and the water kept up, a compensation had been paid to the plaintiffs for flowage, by the defendants and those from whom they claim title, until the year 1850, since which time no compensation had been paid. Upon the overruling of the demurrer to this bill, as reported in 4 R. I. Rep. 301, the defendants answered the same, and in their answer set up as defences to the relief prayed by the bill that they, and those from whom they claimed title, had maintained said dam at its present height, under a claim of right, for upwards of forty years before the filing of the bill, paying the defendants and those under whom they claimed, a compensation for the flow upon their lands, — the last payment having been made in 1852, in full of all damages up to the 1st day of August, 1850, and that they had never refused to pay such compensation; the plaintiffs never having demanded it since the last payment, although they agreed to take $20 as such compensation for the year following said last payment; that from 1809 to 1820, the water-power created by said dam was used to drive a water-mill, built by one William Potter, and situated at the outlet of said pond; and that after that time, when it was conveyed to the defendants, and up to 1829, said mill was run more or less by the owners thereof, when, having become dilapidated, it was removed; but that said dam had been maintained for the purpose of keeping up the pond at its old height, as a reservoir for the use of the Bellefonte mills, situated about a mile and a quarter below said dam, owned by a portion of the defendants, and for the use of the Cunliff mills, situated between said Bellefonte mills and the dam, and owned by others of the defendants; — the rights to said reservoir, since 1820, when they were purchased by the defendants, always having been conveyed, in un-

divided moieties, as appurtenant to said mills; and the answer claimed the right of the defendants to keep up said dam, for such purpose, under the mill act of this state. The answer further alleged, that the complainants never denied the right of the defendants to maintain said dam until about the time of the filing of the bill, and never requested them to remove, or cut down, or reduce the same, so as not to flow the lands of the complainants; that the injury done by such flow is inconsiderable, and that the maintenance of said dam is absolutely essential to the profitable use and operation of the mills of the defendants, as without it, they would have an insufficient supply of water for a large portion of the time; that since the mill at the outlet had been removed, and before the filing of the bill, "the Cunliff mills have been owned by several different persons and firms, who, as the defendants believe, purchased the same in full confidence and expectation of continuing the use of Mashapaug Pond in connection therewith in the same manner as it had been used before; that large sums of money have been expended by some of said owners in the improvement of said Cunliff estate, and which, as the defendants believe, would not have been done but for the expectation aforesaid, of all of which the defendants believe the complainants had notice." The defendants further alleged "that they do not know or believe that during the period aforesaid, said Mashapaug dam has ever been open, and the water of the pond drawn down to its natural level, except for the purpose of repairing said dam; but that they believe that said dam has ever since 1820, if not longer, been maintained at its present height, and said pond always kept up as much as possible for the use of said Bellefonte and Cunliff mills." The answer further claimed, that after so long an enjoyment by the defendants of the use of said pond under a claim of right, upon compensation, and the acquiescence of the complainants therein by accepting compensation for the same, the complainants were not entitled to any relief from a court of equity until they had first established their rights as set up in their bill by a trial at law.

Upon the filing of the replication, proofs were taken on the part of the plaintiffs, tending to prove that the keeping up of

Mashapaug Pond to the height of the dam, did not increase, all things considered, the water in that pond ; since, in some way, when the water was so raised, the water in Spectacle Pond, at but a little distance from it, was also raised, and so, either through subterranean channels of communication, or by diverting the springs which supplied Mashapaug Pond, from that pond to Spectacle Pond, the water passed into the latter pond, which had another outlet ; and from that cause, and the greater absorption and evaporation, was lost to the mills of the defendants. The plaintiffs also offered proof tending to show that the damage to their lands by the backing of water upon them was far from inconsiderable, as stated in the answer ; and one of the complainants, being produced as a witness on their part, swore that some time between 1831 and 1833, and again in 1837, he disputed, in conversation with William Rhodes, one of the owners of the Bellefonte mills, and in 1852, with one Briggs, then an owner in the Cunliff mills, the right of the defendants to keep up the dam as a reservoir for their mills ; and that though he had received compensation for the flowage up to 1850, he never assented to the right claimed, but had offered to Rhodes to refer the right as well as the damage, to Mr. Justice Staples, — Rhodes being willing to refer the damage only.

The defendants relied for proof wholly upon their answer, and the following written admission of the complainants : —

" The complainants in this cause hereby agree to admit upon the hearing thereof and otherwise as may be necessary, that one William Potter in or about the year 1809, owned the premises at the Mashapaug Pond, in complainants' bill mentioned as now being owned by the respondents, and erected thereon a water-mill and the dam in question ; that said Potter continued to own and run said mill and to maintain said pond until the year 1820, when he sold and conveyed said Mashapaug factory estate, including the land aforesaid and the buildings and improvements thereon, one undivided moiety to the defendants, Christopher Rhodes and others, copartners, under the firm of the Bellefonte Manufacturing Company, and the other moiety to Thomas Sprague of Providence ; that said

Bellefonte company then owned and operated the Bellefonte mill so called, situate in Cranston, about one and three quarters miles below said Mashapaug dam, and upon the same stream, and which mill was at the commencement of this suit, and still is, owned by the defendants, Christopher Rhodes, Robert Rhodes, George C. Arnold, and Phebe Arnold; and that the said Thomas Sprague, at the time of said sale and conveyance, owned and operated another mill, since known as the Cunliff mill, situate upon the same stream between the said Bellefonte and Mashapaug mills, and which said Cunliff estate at the commencement of this suit was, and still is, owned by the defendants, Bowen and Batty; that said Mashapaug mill continued to be run more or less by the owners thereof until the year 1829, when having become dilapidated it was taken down and never since rebuilt, but that said Mashapaug dam was continued to be maintained for the use of said Bellefonte and Cunliff mills; that the one undivided moiety of said Mashapaug estate and privilege belonging to the owners of the Cunliff mill has always been conveyed therewith; that the respondents, and those from whom they claim, have maintained the said dam ever since the same was first erected, as aforesaid, and during all the time the said dam has been kept up for the use of the said several mills as aforesaid, all of which were water-mills, and during the greater portion of the same period the pond has been kept up to its present height for the like use; that since said Mashapaug mill was removed, and before the commencement of this suit, the said Cunliff estate was owned by several different persons and firms; that large sums of money have been expended by some of said owners in the improvement of said Cunliff estate, of which the complainants had notice; that compensation has been paid by the respondents and those from whom they claim, to the complainants for every year that the complainants' land has been flowed, up to the year 1850; that the respondents have never refused to pay for the flowing complained of since that time, although they have neglected so to do; that the complainants have made no demand for said flowage since about the latter part of 1852; that about the 17th of March, 1852,

said Rufus Sprague, for himself and the other owners of said lands, in consideration of $75 then paid to him, released all claims against said Bellefonte Company for said flowage up to August, 1850, and then agreed to release all claims for said flowage for one year from August 1st, 1850, to August 1st, 1851, upon payment of $20."

*Bradley* and *Metcalf*, for the complainants, cited Digest, 1844, p. 204, to the point that the dam of the defendants was not within the mill acts a reservoir, as they contended, not being a mill-pond, within the meaning of that act; and *Jordan* v. *Woodward*, 40 Maine, 317, to the rule of construction of mill acts. To the point that the injury, caused by the flow of the dam, to the lands of the complainants, was a nuisance which the court could enjoin, they cited *Sprague* v. *Rhodes*, 4 R. I. Rep. 301; and to the point of the abandonment of the mill-dam by the defendants, relied upon by them, *Baird* v. *Hunter*, 12 Pick. 556.

*Matthewson*, for the respondents : —

1st. The flowing complained of is authorized by statute, and that, although the pond is used as a reservoir only. Digest, 1822, p. 374; Ib. 1844, p. 205; *Wolcott Manuf. Co.* v. *Upham*, 5 Pick. 292; *Bradley* v. *Rice*, 1 Shep. 198; *Nelson* v. *Butterfield*, 8 Shep. 220.

2d. The right to raise the pond for the Mashapaug mill having been once acquired, the owners of that mill had the right to continue the pond for the use of other mills, after that mill was abandoned. Angell, Watercourses, §§ 227, 228.

3d. The acquiescence of the complainants for the length of time and in the manner disclosed by the case, and the consequent improvements made by the respondents, are in themselves sufficient to preclude the plaintiffs from the aid of the court. *Sprague* v. *Steere*, 1 R. I. 247; *Sprague* v. *Rhodes*, 4 Ib. 302; *Birmingham Canal Co.* v. *Lloyd*, 18 Ves. 515.

4th. Twenty years' uninterrupted enjoyment of the use of water in a particular manner is a conclusive presumption of right. Here no interruption is shown. 4 Mason, 402; 6 East, 215; 16 Pick. 241.

5th. The injury complained of not being irreparable, but trivial and capable of compensation, the plaintiffs are not entitled to the interposition of the court. 2 Story Eq. § 925; *White* v. *Co-*

*hen,* 19 Eng. L. & Eq. 149; *Wood* v. *Sutcliffe,* 8 Eng. L. & Eq. 222; *Attorney-General* v. *Sheffield Gas Co.* 19 Eng. L. & Eq. 643, 650; *Van Winkle* v. *Curtis,* 2 Greene's Ch. 422.

6th. The question of nuisance being in dispute, the complainants have no right to come into equity for relief, until that shall have been tried at law. *Ingraham* v. *Dunnell,* 5 Met. 119; *Sollau* v. *DeHeld,* 11 Eng. L. & Eq. R. 104, 117; *Potter* v. *Whitham,* 5 Shep. 292; *Sprague* v. *Rhodes, supra.*

AMES, C. J. It is evident that this case is not one for the specific action invoked by the bill. The right of the plaintiffs, so far from being clear from what has been disclosed at the hearing, is embarrassed in the first place by the question under our mill act. This, it is true, we might, as incidental to the relief, decide; but then, again, the title is rendered, at the very least, doubtful, by the mixed question of law and fact which the case raises, to wit: whether the defendants have not, by the adverse enjoyment of themselves and of those under whom they claim for upwards of twenty years under a claim of right, gained a title, as against the plaintiffs, to keep up this dam for the use of their mills, upon paying a reasonable compensation for flowage. These are questions for a court of law; and the last peculiarly so; not only from its exclusively legal character, but from the kind of proof which it involves, proper to be submitted only to a jury.

No doubt a court of equity may, when it finds the plaintiff's title embarrassed by mixed questions of law and fact, retain the bill, and give the plaintiff liberty to bring an action at law or make up issues at law, fitted to resolve those questions. But in a case like this, where the title of the plaintiffs, doubtful under the statute at best, has been suffered by them to be weighed down by upwards of twenty years' user of the defendants, which, so far as we can see, was adverse, the proper course of the plaintiffs was, before filing their bill, to have asserted their title at law; and afterwards, if there successful, to come here for redress against a continued resistance to their established legal rights.

There is no reason apparent for their coming into this court, in the first instance, such as there would be if they were suffering an irreparable mischief, which demanded the interposition of the court, pending the litigation at law; or, if they required the

Sprague & another *v.* Rhodes & others.

aid of the court to insure them, by way of condition upon the other party in the matter of proofs, or by discovery, a fair trial at law. Nothing of this sort is even pretended; but it is the bald case of plaintiffs coming into this court to abate a mill-dam, or the dam of a reservoir for the use of mills, on account of the flowage of land caused thereby, when they have accepted compensation for the flowage from 1809 to 1850; the dam having been kept up as a mere reservoir dam at least from 1832 to the filing of this bill in 1855, notwithstanding as one of the plaintiffs swears he disputed the right of the defendants to maintain it. It is singular, if the right were really contested by him, that he did not, in all this course of time, contest it in the effectual form of an action at law, by which it might have been settled for or against him! And during the three years and upwards that this bill has been pending, it is again singular that no application has been made to the court by the plaintiffs, for liberty to bring an action at law to establish their title.

In the leading case upon this subject of *Jones* v. *Bacon,* 4 M. & C. 433; s. c. 18 Eng. Cond. Ch. R. 432, Lord Cottenham says, that he could " find no case in which the court has thought it right to retain a bill, simply for the purpose of enabling a plaintiff to do that," that is, to bring an action at law to settle his title, " which these plaintiffs might have done at any time during the last four years ; " referring to the period of time which had elapsed since the plaintiffs knew of what they claimed to be an infringement of their right. But what should be said of retaining a bill until the right was settled at law, after a delay of the plaintiff to bring an action for upwards of twenty-six years since he obtained such knowledge? What should be said of a delay to sue so protracted, and an adverse user on the other side so long continued, that it has become a grave question at least, whether the user has not ripened into a right? Under such circumstances, we can give no relief upon this bill, nor find any precedent for retaining it until the title of the plaintiffs is settled at law; and as upon this ground the bill must be dismissed with costs, we purposely abstain from touching upon the matters of law and fact concerning the title, as well as upon the ground of equitable estoppel set up in the answer.

*Bill dismissed with costs.*